# OVERVIEW OF LAND PATENTS

## You may be asking the question, what is a land patent?

**A land patent** is - the conclusive evidence of the right, title and interest in a particular track of land granted to a private party by and from the united states government. In addition to the granting of the land to the grantee, he also receives all of the Authority and Jurisdiction relating to that land. This is what is called a **True Title!**

Note; The land disposal (patent), authority and jurisdiction come by way of Treaty Law.

Your land comes to you from the treaty through your Land Patent. This is critical. The Land Patent secures the treaty authority and jurisdiction to you. The courts are bound by the Supremacy Clause, Article VI Clause II & of the Constitution to uphold the treaty making your Patent a statutory limitation throughout the land! **Wineman v. Gastrell, 54 FED 819, 2 US App. 581.**

When a land patent is issued by the united states government to the grantee, that land patent stands forever, That is why on every land patent issued it states to their **HEIRS AND ASSIGNS FOREVER!**

"The American people, newly established sovereigns in this republic after the victory achieved during the Revolutionary War, became complete owners in their land, beholden to no lord or superior; sovereign freeholders in the land themselves.

These freeholders in the original thirteen states now held allodial title to the land they possessed. This new and more powerful title protected the sovereigns from unwarranted intrusions or attempted takings of their land, and more importantly it secured in them a right to own land absolute in perpetuity. By definition, the word perpetuity means, continuing forever".

# ARE LAND PATENTS VALID?

Regarding the validity of allodial titles and Land Patents. It depends on whom you ask. If you ask an attorney, they'll snort and say it has no validity in the courts. If you ask the title insurance company, they'll hiss and frown and turn red in the face from embarrassment. If you ask a clerk at the Bureau of Land Management, they'll roll their eyes and say that land patents are worthless.

If you ask fellow 'Sovereign Citizen' or review the court record that have successfully kept the State or the banks from foreclosing on their property due to a land patent clouding the equitable title, then you would say it has validity. I assert there are hundreds of people who have successfully staved off government intervention through the use of land patents. How long that will last depends on the judicial and political activism of the American people. Still, there is no better way to cloud an equitable title than to update the land patent in "Your Name." I **personally can testify to the fact that land patents are valid because I have done it!**

**Over one hundred and eighty (180) years of case law proves that Land Patents are in fact valid!!!!!!! None of which has ever been overturned!**

## LAND PATENTS CLOUD EQUITABLE TITLES

There haven't been any great victories in the courts lately, but then again we haven't had a justice system for several generations. The issue of Land Patents has already been decided, *(res judicata)*!

It also depends on the political strength of the Constitution and how diligent the courts are in upholding the law of the land. People want problems solved without taking any responsibility for creating them in the first place through ignorance, neglect and fear. It also depends on the political strength of the sovereign people. Are you willing to stand for your rights and property or NOT? Land Patents were upheld and respected for generations until the American people went to sleep. Suddenly, they're waking up and realizing they have been *had* by their own government!

41

Be prepared to defend your Land Patent in a Court of competent jurisdiction, Equity/Admiralty/Maritime court that has no jurisdiction to rule on the Land Patent. These patents are being upheld 50% of the time by local law enforcement and government officials, more often in rural areas than urban areas of the West. With over one hundred and eighty plus years of court cases proves that land patent is in fact valid!

## Over 180 years of unanimous U.S. Supreme Court cases speak for themselves that land patents are valid:

**WRIGHT v. MATTISON 18 HOW (1856) (9-0):** The courts have concurred, it is believed, without an exception, in defining "color of title" to be that which in appearance is title, but which in reality is no title. Yet a claim asserted under the provisions of such a deed is strictly acclaim under color of title, hence, color of title, even under a void and worthless deed, has always been received as evidence that the person in possession claims adversely to the entire world. Color of title may be made through conveyances, or bonds, or contracts, or bare possession under parol agreements. We can entertain no doubt in this case that the auditor's deed to the purchaser at the tax sale is color of title in Woodward, in the true intent and meaning of the Statute, and without regard to its intrinsic worth as a title.

**STONE v. UNITED STATES 69 U.S. (1865) (10-0):** A patent is the highest evidence of title, and is conclusive as against the government, and all claiming under junior patents or titles, until it is set aside or annulled by some judicial tribunal. The patent is but evidence of a grant, and the officer who issues it acts magisterially and not judicially.

**SANFORD v. SANFORD 139 U.S. (1891) (9-0):** In ejectment, the question always is who has the legal title for the demanded premises, *not who ought to have it.* In such cases the patent of the government issued upon the direction of the land department is unassailable. A Court of equity has jurisdiction in such a case to compel the transfer to the plaintiff of property which, but for such fraud and misrepresentation, would have been awarded to him, and of which he was thereby wrongfully deprived.

**CHANDLER v. CALUMET & HECLA 149 US (1893) (7-0):** It is well settled that the state could have impeached the title thus conveyed to the canal company only by a bill in chancery to cancel or annul it, either for fraud on the part of the grantee, or mistake or misconstruction of the law on the part of its officers in issuing the patent. But whether there is any technical estoppel, in the ordinary sense, or not, it cannot be maintained that the state can issue two patents, at different dates to different parties, for the same land, so as to convey by the second patent a title superior to that acquired under the first patent.

Neither can the second patentee, under such circumstances, in an action at law, be heard to impeach the prior patent for any fraud committed by the grantee against the state, or any mistake committed by its officers acting within the scope of their authority and having jurisdiction to act and to execute the conveyance sought to be impeached. Neither the state nor its subsequent patentee is in a position to cancel or annul the title which it had authority to make, and which it had previously conveyed to the patentee.

**SARGEANT v. HERRICK 221 US (1911) (9-0):** It is apparent that the validity of the tax title depends upon the question whether the location of the warrant in 1857, without more, gave a right to a patent. Among the conditions upon compliance with which such a right depends, none has been deemed more essential than the payment of the purchase price, which, in this instance, could have been made in money or by a warrant like the one actually used.

**UNITED STATES v. CREEK NATION 295 US (1935) (9-0):** They were intended from their inception to effect a change of ownership and were consummated by the issue of patents, the most accredited type of conveyance known to our law.

**SUMMA CORP v. CALIFORNIA STATE EX REL. LANDS COM'N 466 US (1984) (8-0):** The final decree of the Board, or any patent issued under the Act, was also a conclusive adjudication of the rights of the claimant as against the United States, but not against the interests of third parties with superior titles.

Finally, in **UNITED STATES v. CORONADO BEACH CO. 255 US (1921):** The Court expressly rejected the Government's argument, holding that the patent proceedings were conclusive on this issue, and could not be collaterally attacked by the Government. The necessary result of the Coronado Beach decision is that even "sovereign" claims such as those raised by the State of California in the present case be barred.

43

**FRIENDS OF MARTIN BEACH v. MARTIN BEACH  Case No. CIV517634 (2013):** These decisions control the outcome of this case. We hold that California cannot at this late date assert its public trust easement over petitioner's property, when petitioner's predecessors-in-interest had their interest confirmed without any mention of such an easement in proceedings taken pursuant to the Act of 1851. The interest claimed by California is one of such substantial magnitude that regardless of the fact that the claim is asserted by the State in its sovereign capacity, this interest, like the Indian claims made in **BARKER** and in **UNITED STATES v. TITLE INS. & TRUST CO.,** must have been presented in the patent proceeding or be barred.

After exclusive jurisdiction over lands within a State have been ceded to the United States, private property located thereon is not subject to taxation by the State, nor can state statutes enacted subsequent to the transfer have any operation therein.
**Surplus Trading Company v. Cook, 281 US 647;**

**Western Union Telegraph Co. v. Chiles, 214 US 274;**
**Arlington Hotel v. Fant, 278 US 439;**
**Pacific Coast Dairy v. Department of Agriculture, 318 US 285.**

### Miscellaneous:

Fictitious entities, like trusts, corporations, etc., cannot obtain land patents except by express act of the united states Congress. An example of Congress granting land through patents to fictitious entities is the Railroad Grants made to compensate the railroad companies for building railroads across America.

A land patent is permanent and cannot be changed by the government after its issuance except in case of fraud, clerical error, or failure to pay the initial administrative fees. A statute of limitations applies, (2 years).

# What Do Private Property Rights Mean?

In a "Fifth Amendment" treatise, by Washington State Supreme Court Justice Richard B. Sanders (12/10/97), he writes: "Our state, and most other states, define property in an extremely broad sense." That definition is as follows: "<u>Property in a thing consists not merely in its ownership and possession, but in the unrestricted right of use, enjoyment, and disposal.</u> Anything, which destroys any of the elements of property, to that extent, destroys the property itself. <u>The substantial value of property lies in its use.</u> If the right of use be denied, the value of the property is annihilated and ownership is rendered a barren right".

As a Founding Father, John Adams said: "The moment the idea is admitted into society that property is not as sacred as the law of God, and that there is not a force of law and public justice to protect it, anarchy and tyranny commence."

President Calvin Coolidge said: "Ultimately, property rights and personal rights are the same thing".

Rancher and Property Rights Activist Wayne Hage said: **"If you don't own the rights and control property then you are property"!**

## Private Property Rights mean:

1. The owner's exclusive authority to determine how his/her private property is used;

2. The owner's peaceful possession, control, and enjoyment of his/her legally granted, purchased, deeded private property;

3. The owner's ability to make contracts to sell, rent, or give away all or part of the legally granted, purchased/deeded private property;

4. That local, city, county, state, and federal governments are prohibited from exercising eminent domain for the sole purpose of acquiring legally purchased/deeded private property so as to resell to a private interest or generate revenues;

5. That no local, city, county, state, or federal government has the authority to impose directives, ordinances, fees, or fines regarding aesthetic landscaping, color selections, tree and plant preservation, or open spaces on legally purchased/deeded private property;

6. That no local, city, county, state or federal government shall implement a land use plan that requires any part of legally purchased/ deeded private property be set aside for public use or for a Natural Resource Protection Area directing that no construction or disturbance may occur;

7. That no local, city, county, state, or federal government shall implement a law or ordinance restricting the number of dwellings that may be placed on legally purchased/ deeded private property;

8. That no local, city, county, state, or federal government shall alter or impose zoning restrictions or regulations that will devalue or limit the ability to sell legally purchased/deeded private property;

9. That no local, city, county, state, or federal government shall limit profitable or productive agriculture activities by mandating and controlling what crops and livestock are grown on legally purchased/deeded private property;

10. That no local, city, county, state, or federal government representatives or their assigned agents may enter private property without the written permission of the property owner or is in possession of a lawful warrant from a legitimate court of law. This includes invasion of property rights and privacy by government use of unmanned drone flights.

Case on point:

*Neither a town nor its officers have any right to appropriate or interfere with private property,* **Mitchell v. City of Rockland-15 me. 496.**

# TREATIES ARE INTERNATIONAL LAW

1. A treaty is a compact made between two or more independent nations with a view to the public welfare treaties are for perpetuity, or for a considerable time. Those matters, which are accomplished by a single act, and are at once perfected in their execution, are called agreements, conventions and actions.

2. On the part of the United States, treaties are made by the president, by and with the consent of the senate, provided two-thirds of the senators present concur. **Constitution Article II, § 2, Ln. 2.**

3. No state shall enter into any treaty, alliance or confederation; **Constitution Article I, §10, Ln. 1**; nor shall any state, without the consent of congress, enter into any agreement or compact with another state, or with a foreign power. ld. **Art.I, see: 10, n. 2; 3 Story on the Const. §1395.**

4. A treaty is declared to be the supreme law of the land, and is therefore obligatory on courts; **1 Cranch, R. 103; 1 Wash. C. C. R. 322 1 Paine, 55**; whenever it operates of itself without the aid of a legislative provision; but when the terms of the stipulation import a contract, and either of the parties engages to perform a particular act, the treaty addresses itself to the political, not the judicial department, and the legislature must execute the contract before it can become a rule of the court. **2 Pet. S.C. Rep. 814.** Vide Story on the Constitution. **Index, h. t.; Serg. Constit. Law, Index, h. t.;**
**4 Hall's Law Journal, 461; 6 Wheat. 161: 3 Dall. 199; 1 Kent, Comm. 165, 284.**

5. Treaties are divided into personal and real. The personal relate exclusively to the persons of the contracting parties, such as family alliances, and treaties guarantying the throne to a particular sovereign and his family. As they relate to the persons they expire of course on the death of the sovereign or the extinction of his family. Real treaties relate solely to the subject matters of the convention, independently of the persons of the contracting parties, and continue to bind the state, although there may be changes in its constitution, or in the persons of its rulers. **Vattel, Law of Nations b. 2, c.12, 183-197.**" For the language within the definition you can see that a Treaty is the supreme law of the land. The language within the Treaty is sovereign and with sovereign language you acquire Allodial. Now lets look at the language of Allodial (Do you see the paper trail).

# TRESSPASS CASES

Michigan jurisprudence has never recognized immunity on behalf of a city, village, township, county or any administrative division thereof from liability for trespass on private property, whether the trespass be of long or short duration. **Herro v. Chippewa County Road Commissioners, 368 Mich 263, 272-273 (1962).**

The Fourth Amendment authorizes a person in plaintiff's position, as proprietor of a business, other than one pervasively regulated, such as trafficking in alcoholic liquors, **Colonnade Catering Corp v. United States, 397 US 72; 90 S Ct 774; 25 L Ed 2d 60 (1970)**, or firearms, **United States v. Biswell, 406 US 311; 92 S Ct 1593; 32 L Ed 2d 87 (1972)**, to bar governmental agents, including inspectors carrying out police power functions to protect public health and safety, from his property, **Camara v. Municipal Court of the City and County of San Francisco, 387 US 523; 87 S Ct 1727; 18 L Ed 2d 930 (1967); See v. City of Seattle, 387 US 541; 87 S Ct 1737; 18 L Ed 2d 305 (1978); Donovan v. Dewey, 452 US 549; 101 S Ct 2534; 69 L Ed 2d 262 (1981).**

Common law and constitutional principles of governmental or sovereign immunity have never permitted government agents to commit trespasses in violation of property rights.
**Little v. Barreme, 2 Cranch 6 US 170; 2 L Ed 243 (1804); Wise v. Withers, 3 Cranch 7 US 331; 2 L Ed 457 (1806); Osborn v. Bank of United States, 9 Wheat 22 US 738; 6 L Ed 204 (1824); Mitchell v. Harmony, 13 How 54 US 115; 14 L Ed 75 (1852); Bates v. Clark, 95 US 204; 24 L Ed 471 (1877).**

Under the Federal Tort Claims Act similarly, federal law enforcement officers who generally enjoy absolute immunity from tort liability may nonetheless be held liable for damages for the tort of trespass. **Black v. Sheraton Corp of America, 184 US App DC 46, 564 F2d 531, 541 (1977).** Accordingly, plaintiff's complaint facially pleads a viable cause of action for trespass as a constitutional tort.
**Smith v. Department of Public Health, 428 Mich 540 (1987).**

This Court retains no further jurisdiction.

# OVER 180 YEARS OF UNANIMOUS U.S. SUPREME COURT CASES SPEAKS FOR THEMSELVES

**FRIENDS OF MARTIN'S BEACH v. MARTIN'S BEACH LLC, CASE NO. CIV517634 SEPTEMBER 20, 2013.** Plaintiffs attempt to argue it is entitled to access Martins private property based on the application of the public trust doctrine must likewise fail and Martins is entitled to summary judgment on Plaintiff's fourth cause of action as a matter of law. As with Plaintiff's argument under the California Constitution, United States Supreme Court authority defeats Plaintiff's public trust theory. It is undisputed that Martins' predecessor-in-interest had his interest in the Property confirmed without any mention of a public trust easement in federal patent proceedings under the Act of 1851. Therefore, as a matter of law, a public trust easement *cannot* be asserted over Martins' Property under the holding of the U.S. Supreme Court in **Summa Corp. v. California (1984) 466 US 198, 202.**

**WRIGHT v. MATTISON 18 HOW (1856) (9-0)** - The courts have concurred, it is believed, without an exception, in defining "color of title" to be that which in appearance is title, but which in reality is no title. Yet a claim asserted under the provisions of such a deed is strictly acclaim under color of title, hence, color of title, even under a void and worthless deed, has always been received as evidence that the person in possession claims adversely to all the world. Color of title may be made through conveyances, or bonds, or contracts, or bare possession under parol agreements. We can entertain no doubt in this case that the auditor's deed to the purchaser at the tax sale is color of title in Woodward, in the true intent and meaning of the Statute, and without regard to its intrinsic worth as a title.

**STONE v. UNITED STATES 69 US (1865) (10-0)** - A patent is the highest evidence of title, and is conclusive as against the government, and all claiming under junior patents or titles, until it is set aside or annulled by some judicial tribunal. The patent is but evidence of a grant, and the officer who issues it acts magisterially and not judicially.

**SANFORD v. SANFORD 139 US (1891) (9-0)** - In ejectment the question always is who has the legal title for the demanded premises, not who ought to have it. In such cases the patent of the government issued upon the direction of the land department is unassailable. A Court of equity has jurisdiction in such a case to compel the transfer to the plaintiff of property which, but for such fraud and misrepresentation, would have been awarded to him, and of which he was thereby wrongfully deprived.

**CHANDLER v. CALUMET & HECLA 149 US (1893) (7-0)** - It is well settled that the state could have impeached the title thus conveyed to the canal company only by a bill in chancery to cancel or annul it, either for fraud on the part of the grantee, or mistake or misconstruction of the law on the part of its officers in issuing the patent. But whether there is any technical estoppel, in the ordinary sense, or not, it cannot be maintained that the state can issue two patents, at different dates to different parties, for the same land, so as to convey by the second patent a title superior to that acquired under the first patent. Neither can the second patentee, under such circumstances, in an action at law, be heard to impeach the prior patent for any fraud committed by the grantee against the state, or any mistake committed by its officers acting within the scope of their authority and having jurisdiction to act and to execute the conveyance sought to be impeached. Neither the state nor its subsequent patentee is in a position to cancel or annul the title which it had authority to make, and which it had previously conveyed to the canal company.

**SARGEANT v. HERRICK 221 US 404 (1911)(9-0)** - It is apparent that the validity of the tax title depends upon the question whether the location of the warrant in 1857, without more, gave a right to a patent. Among the conditions upon compliance with which such a right depends, none has been deemed more essential than the payment of the purchase price, which, in this instance, could have been made in money or by a warrant like the one actually used.

**UNITED STATES v. CREEK NATION 295 US 103 (1935)(9-0)** - They were intended from their inception to effect a change of ownership and were consummated by the issue of patents, the most accredited type of conveyance known to our law.

**SUMMA CORP v. CALIFORNIA STATE EX REL. LANDS COM'N 466 US (1984)(8-0)** - The final decree of the Board, or any patent issued under the Act, was also a conclusive adjudication of the rights of the claimant as against the United States, but not against the interests of third parties with superior titles. Finally, in **UNITED STATES v. CORONADO BEACH CO. 255 US (1921)** The Court expressly rejected the Government's argument, holding that the patent proceedings were conclusive on this issue, and could not be collaterally attacked by the Government.

The necessary result of the Coronado Beach decision is that even "sovereign" claims such as those raised by the State of California in the present case must, like other claims, be asserted in the patent proceedings or be barred. These decisions control the outcome of this case. We hold that California cannot at this late date assert its public trust easement over petitioner's property, when petitioner's

146

predecessors-in-interest had their interest confirmed without any mention of such an easement in proceedings taken pursuant to the **Act of 1851**.

The interest claimed by California is one of such substantial magnitude that regardless of the fact that the claim is asserted by the State in its sovereign capacity, this interest, like the Indian claims made in **BARKER** and in **UNITED STATES v. TITLE INS. & TRUST CO.**, must have been presented in the patent proceeding or be barred.

# NO COUNTY, CITY NOR MUNICIPALITIES HAVE JURISDICTION OVER PRIVATE PROPERTY!

## NOTICE AND CASES >> awarded $8 million for CODE ENFORCEMENTS OF ILLEGAL TRESPASS!

This Notice is to all Employees working for a PRIVATE CORPORATION. "Notice" these Landmark Supreme Court Rulings also inform us that all Private Corporations Codes, statutes, rules, ordinances & regulations DO NOT APPLY TO ANYONE, PERIOD, not just if one has a business.

See:

**Monterey v. Del Monte Dunes, 526 US 687 (1999)** – Plaintiff awarded $8 million for Code Enforcement's Illegal Trespass and restriction of his business; and another $1.45 million for aggregation of forced sale.

And;

**Palazzolo v. Rhode Island, 533 US 606, 121 S. Ct. (2001)** – The U. S. Supreme Court ruled that Municipalities cannot exert any acts of ownership or control over property that is not owned by them.

<u>*And affirming both cases:*</u>

**Lucas v. South Carolina Coastal Council, 505 U. S. 1003, 120 L. Ed. 2d 798 (1992)**

Be sure to do your own research.